☑ FILED ___ ENTERED
___ LOGGED ___ RECEIVED
4:33 pm, Oct 21 2025
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ M.G. ___ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | Case NO. 8:25-mj-02215-GLS |
| ) | |
| ROBERT MATTHEW SHINES, ) | |
| ) | |
| Defendant. ) | |
| ----------------------------------- ) | |

### GOVERNMENT'S MOTION TO STAY RELEASE ORDER AND REQUEST FOR EXPEDITED APPEAL OF RELEASE ORDER

Pursuant to Title 18, United States Code, Section 3145(a), the United States hereby asks the United States District Court to review, and revoke, the decision of the United States Magistrate Judge on October 20, 2025, to release the Defendant **ROBERT MATTHEW SHINES** on conditions.

Defendant should be detained because:

1. He is charged with a violation of Title 18, United States Code, Section 794, and evidence exists that Defendant poses a flight risk and is a danger to the community, which the district court must review de novo with the authority of 18 U.S.C. § 3145.[1]

2. First, no conditions exist that will reasonably ensure that Defendant will appear in court, a factor that would recommend a revocation of the Defendant's release. The Defendant is facing a life sentence; he has no appreciable ties to the District of Maryland; and his current lifestyle is financed solely by his illegal work for the People's Republic of China ("PRC").

---

[1] See *U.S. v. Salerno*, 481 U.S. 739 (1987) (holding that the Bail Reform Act's appropriation of authority to review, stay, and revoke a magistrate's release order is constitutional); See also *U.S. v. Brigham*, 569 F.3d 220, 229 (5th Cir. 2009) (holding that the inability to stay an order of release during the review of such an order would make the ability to review a release "illusory").

3. As supported by the allegations in the Complaint, the Defendant had a multi-year relationship with a foreign intelligence service that has the capability to exfiltrate him from the United States using clandestine methods. This could be as simple as the Defendant going to the People's Republic of China ("PRC") embassy in Washington, D.C. and obtaining a passport or other assistance leaving the country, all of which would recommend that the Defendant be detained.[2]

4. The PRC may be motivated to assist in extracting the Defendant given the yearslong relationship. For example, on or about July 16, 2024, the Defendant suggested "shuffling c projects" with "not c" projects and not "stat[ing] outright your client's final goal with him, as they did with me." In response, CC-2 wrote "my top priority is [to] protect you, that is my most important goal, no matter what we are doing now or future." Similarly, after the January 25, 2025, courier payment, the Defendant wrote to CC-2 in an apparent reference to the courier and said "Tell her I said thanks for worrying about me. You too," showing that these foreign agents had expressed concerns about the Defendant's well-being.

5. Second, the Defendant poses a danger to the community.[3] The Defendant is charged with a serious national security violation, conspiracy to provide defense information to a foreign government. *See* 18 U.S.C. § 794(c). He attempted to gather this information for the PRC since at least 2021 and did so as recently as October 10, 2025.

6. Courts have recognized this knowledge as dangerous to the community. *See, e.g., United States v. Wenheng Zhao*, No. 2:23-CR-372-RGK, ECF No. 51, at *3 (C.D.C.A. Oct. 3.

---

[2] *U.S. v. Chagra*, 850 F. Supp. 354 (W.D.P.A. 1994) (describing contributing factors to fight risk status such as length of sentence, severity of crime, and nature of the offense); *see also Reno v. Flores*, 507 U.S. 292 (1993).
[3] *U.S. v. Salerno*, 481 U.S. 739 (1987) (holding that it is constitutional for section 3145 to require a defendant be held on the account of future dangerousness).

2023) (finding that defendant posed a risk to the community where "The Government alleges that Defendant held a Secret-level security clearance *and presumably knows more sensitive information.... As alleged, Defendant disclosed sensitive information and is capable of disclosing more if released.*" (Emphasis added)); *United States v. Teixeira*, No. 1:23-CR-10159, ECF No. 37 (D. Mass. May 22, 2023) ("The risk of future disclosures is intolerable; it could jeopardize the safety of soldiers, citizens, and allies of the United States. Moreover, Defendant's knowledge of TS/SCI did not end with termination of his TS/SCI access. He transcribed, photographed, and discussed TS/SCI and, at a minimum, retains recall of such information.") (emphasis added) (citing *United States v. Madrigal*, No. 3:22-CR-2019, 2023 WL 2823504, at *11 (W.D. Va. April 7, 2023), for the proposition that the threat of harm the defendant posed to the United States remained high even though defendant no longer had access to the relevant systems); *United States v. Mallory*, 268 F. Supp. 3d 854, 866 (E.D. Va. 2017) (noting that the information the defendant "obtained through his decades of government employment, his apparent desire to sell those secrets to a foreign government, and defendant's skills in tradecraft all show that he poses a grave risk of endangering not only one person, but the U.S. itself"). Notably, as in the present case, the *Teixeira* court stated that "[a] fair reading of Defendant's words is an offer to provide foreigners classified information." *Teixeira*, at *20. Therefore, there is a reasonable belief that he is a danger to the community and should be detained.[4]

WHEREFORE, the United States prays that this Court grant the Government's Motion to Stay this Court's release order pending the expedited setting of an appeal to the district court.

---

4.  *U.S. v. Santiago-Pagan*, 2009 WL 1106814 (M.D.P.A. 2009) (describing an assumption of dangerous behavior on behalf of a detainee, which must be rebutted by the defendant); *see also U.S. v. Salerno*, 481 U.S. 739 (1987).

Respectfully submitted,

Kelly O. Hayes
United States Attorney


By: _____/s/_____
Patricia McLane
Ranganath Manthripragada
Assistant United States Attorney
District of Maryland